## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**JEFFREY DANIEL BURR,**

    **Petitioner,**

  **v.**                                                       **Case No. 04-C-992**

**WARDEN DANIEL BERTRAND,**

    **Respondent.**

## DECISION AND ORDER DENYING
## PETITION FOR A WRIT OF HABEAS CORPUS

On October 12, 2004, Jeffrey Daniel Burr ("Burr"), a person incarcerated pursuant to a state court judgment, proceeding with the assistance of counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 19, 2004, the Honorable Thomas J. Curran screened Burr's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. This case was then transferred to this court upon all parties consenting to the full jurisdiction of a magistrate judge. The pleadings on Burr's petition are closed and the matter is ready for resolution.

**PROCEDURAL HISTORY**

Following a jury trial, on February 20, 2002, Burr was convicted of first-degree intentional homicide, aggravated battery, and false imprisonment, all as a party to the crime. (Ans. Ex. A.) Burr appealed and the court of appeals affirmed his conviction in an unpublished opinion dated June 24, 2003. (Ans. Ex. E.) The Wisconsin Supreme Court denied review on October 27, 2003. (Ans. Ex. F.)

**FACTS**

The following facts are contained in the court of appeals' decision in this case. As the court of appeals noted, these facts are taken from the testimony of Paul Jackson, the only person who testified at trial directly connecting Burr to the victim's death.

> On March 9, 2000, loggers found the dead, nearly naked body of Ronald Ross along a road in Pepin County. The investigation into Ross's death revealed that Ross had been at the Treasure Island Casino near Red Wing, Minnesota, on March 7 and 8. A surveillance videotape showed Ross talking to and eventually leaving the casino with a group of nine persons. Two of these people were identified as cousins Paul and David Jackson, who had registered at the casino hotel.
> Police eventually contacted David at the casino, where he was an employee. He did not provide any information about Ross's death. David and Paul then contacted an attorney and subsequently told investigators that Ross had been murdered and offered to provide details in exchange for immunity. The police agreed, and the information they provided eventually led to fifteen-year-old-Burr's arrest, along with Noah and Arlo White.
> At trial, Paul testified that he went to a party at Noah's house in Red Wing early in the morning of March 9. Burr, the Whites, David and Ross were all at the party. Paul testified that he argued with Ross in the basement approximately two hours after he arrived at the party. Paul said he punched Ross in the chin and knocked him to the floor. According to Paul, the party quickly began to break up and he went upstairs to "cool down."
> Approximately forty-five minutes later, Burr and Noah asked Paul to go to the garage. Paul did, and in the garage he saw an unconscious Ross lying on the ground covered by a blanket. Paul testified that Burr then kicked Ross in the back and that they placed Ross in the back of Arlo's sport utility vehicle. Burr and Paul sat in the back seat, Noah in the front passenger seat, while Arlo drove to Wisconsin. On the ride, Burr said they should kill Ross and suggested slicing his throat. After entering Wisconsin, Ross regained consciousness. Paul said that Burr grabbed a sheathed machete and hit Ross with it for five minutes.
> The men stopped the vehicle on a Pepin County logging road. Burr, Paul and Noah unloaded Ross from the vehicle, dropping him on the ground. Paul went back to the vehicle while Burr and Noah kicked Ross for several minutes and left him on the road. Back in the vehicle, Burr said, "We killed him." The men drove back to Minnesota. At trial, the Ramsey County, Minnesota, medical examiner who performed Ross's autopsy testified that the cause of death was multiple blunt force trauma and that hypothermia was a contributing factor.

State v. Burr, 2003 WI App 162, ¶¶2-6 (unpublished) (footnote omitted).

Burr presents seven claims for relief in his petition: (1) the trial judge was biased against the defense resulting in a violation of Burr's due process right to a fair trial; (2) the prosecutor misstated

evidence and testified during his closing argument which violated Burr's due process right to a fair trial; (3) Burr's right of confrontation was violated when he was denied the opportunity to cross-examine an immunized state witness about whether the witness was aware that the charge he was avoiding carried a mandatory sentence of life in prison; (4) the trial court improperly excluded the prior statements of witness; (5) the court failed to instruct the jury that a person cannot be criminally liable for the actions of other is he is merely a bystander; (6) Burr's sentence was based upon false information; and (7) Burr was penalized at sentencing for exercising his right against self-incrimination.

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court; or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By

contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issues raised by Burr.

**ANALYSIS**

**Judicial Bias**

Burr alleges that the judge demonstrated bias against the defendant by displaying partiality toward the prosecutor and by unfairly denigrating or chastising the defense or defense counsel. (Pet. Br. at 8.) In support of his claim, Burr sets the context of the trial. Burr, a Native-American, was tried in a small Wisconsin town where he did not live. (Pet. Br. at 8.) Burr's defense counsel primarily practiced in Minnesota and had never appeared before the trial judge, whereas the prosecutor and the judge were well-acquainted. (Pet. Br. at 8.) Further, many of the jurors knew the prosecutor and the judge. (Pet. Br. at 8.)

To specifically support his claim that the judge was partial towards the prosecution, Burr points to numerous points in the trial where the trial judge allegedly assisted the prosecutor in properly framing questions following defense objections, (Pet. Br. at 9), limited defense questioning after permitting the prosecution to pursue the same line of questioning, (Pet. Br. at 10), improperly sustained prosecution objections, (Pet. Br. at 10-13), called a recess to permit a prosecution witness to consult with the prosecution during cross-examination, (Pet. Br. at 13), and took over the questioning of a witness during the defense's cross-examination, (Pet. Br. at 14).

To support his claim that the judge unfairly denigrated or chastised defense counsel, Burr points to the fact that the judge said, "I think what is sauce for the goose is sauce for the gander," after the defense made and then withdrew an objection to a prosecution question, (Pet. Br. at 14), said, "The jury will determine that. And what [defense counsel] says is not evidence. He's not a witness in this case. And I'll admonish both counsel not to argue in front of the jury," after the defense objected to an alleged misstatement of testimony, (Pet. Br. at 15), said "Don't say, 'That's right' That's stricken. Any statements of counsel, including [defense counsel's] statements are stricken and are not part of the record. They are not witnesses," after defense counsel objected to a prosecutor saying "That's right"

in response to a witness' answer, (Pet. Br. at 15), asked defense counsel not to object every time there was some minor inconsistency in the prosecutor's closing argument and stated that he would give the prosecution and the defense reasonable latitude in making closing arguments, (Pet. Br. at 15-16), admonished defense counsel for yelling at a witness and the tone of his voice during cross-examination, (Pet. Br. at 16, 17), did not permit defense counsel to cross-examine an immunized witness that he avoided a potential life sentence by obtaining immunity and instead stated that the jury may not consider the consequence of its verdict in reaching its decision, (Pet. Br. at 17), admonished defense counsel to cease asking argumentative questions, (Pet. Br. at 18), and refused to recuse himself from hearing post-trial motions, (Pet. Br. at 18).

The court of appeals determined that when the incidents cited by Burr are reviewed in context, there was no indication that the court was biased against the defendant. 2003 WI App 162, ¶¶14-18.

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case. Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) (citations omitted). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." Edwards v. Balisok, 520 U.S. 641, 647 (1997) (citing Tumey v. Ohio, 273 U.S. 510, 535 (1927); Arizona v. Fulminante, 499 U.S. 279, 308 (1991)).

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See United States v. Grinnell Corp., 384 U.S. [563,] 583 [(1966)]. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do

> so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in Berger v. United States, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." Id., at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's ordinary efforts at courtroom administration -- remain immune.

Liteky v. United States, 510 U.S. 540, 555-56 (1994).

Burr fails to demonstrate that any of the judge's comments, either alone or when viewed together, even when read without the benefit of their context, demonstrate that the trial judge was biased against him. At the very most, certain of the judge's comments may be regarded as mild demonstrations of impatience, dissatisfaction, or annoyance, but the Supreme Court has explicitly held that such ordinary actions do not constitute judicial bias. There is absolutely no indication that any of the arguable negative feelings the judge may have felt towards the defendant emerged from an extra-judicial source or were so deep-seated so as to make a fair trial impossible. Therefore, this court is unable to conclude that the decision of the Wisconsin Court of Appeals was clearly contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Prosecutorial Misconduct**

Burr alleges that at numerous points in his closing and rebuttal arguments, the prosecutor testified, adding evidence that was not supported by the evidence adduced at trial. (Pet. Br. at 24-25.)

The court of appeals held that although it would have been improper for the prosecutor during his closing argument to offer his own testimony as to what happens to a credit card when thrown, the court noted that defense counsel objected before the prosecutor offered improper testimony and this objection was sustained. 2003 WI App 162, ¶24. As for Burr's argument that the prosecutor improperly

testified when he said that attorneys do not assist clients in concocting lies, based upon the context, the prosecutor was merely asking the jury to call upon their common knowledge to reject Burr's claim. Id. at ¶23. Even if this was improper, the court held that Burr failed to demonstrate this comment so infected his trial so as to violate his right to due process. Id.

Although the court of appeals addressed only these two instances of alleged prosecutorial misconduct occurring in the prosecutor's closing, Burr raises numerous other grounds in his present petition. These additional grounds were raised in Burr's recitation of facts in his brief to the court of appeals, (Ans. Ex. B at 19-22), but the court of appeals limited its review to the incidents raised in the argument portion of his brief, 2003 WI App 162, ¶22.

> The leading Supreme Court decision on the question whether prosecutorial misconduct is so egregious that a new trial is required, as a matter of constitutional law, is Darden v. Wainwright, 477 U.S. 168 (1986). In Darden, the Court set forth six factors that should be considered in deciding this question: (1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut. 477 U.S. at 181-82.

Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000)

Even if a defendant is able to demonstrate that multiple of the Darden factors cut in his favor, a finding of prosecutorial misconduct does not automatically follow. Id. Rather, the most important factor is the weight of the evidence against the defendant. Id.

In this case, Burr failed to properly develop his arguments with respect to the numerous other alleged grounds of prosecutorial misconduct not considered by the court of appeals. As such, Burr waived these arguments, and as a consequence of this waiver before the court of appeals, Burr has procedurally defaulted these claims before this court. See Curry v. Farrey, 2007 U.S. Dist. LEXIS 56380, 6-10 (E.D. Wis. 2007) (citing Hashim-Tiggs v. Schneiter, 2007 U.S. Dist. LEXIS 4180, 27-34 (E.D. Wis. 2007); Speener v. Smith, 2002 U.S. Dist. LEXIS 27903, 12 (E.D. Wis. 2002)). Therefore,

this court's review is limited to those two specific instances of alleged prosecutorial misconduct addressed by the court of appeals.

With respect to the prosecutor's statements regarding how credit cards fall, as the court of appeals observed, the prosecutor was stopped as a result of defense counsel's objection before he could offer any improper testimony. As for the prosecutor's comments regarding the conduct of attorneys, when viewed in isolation, this may appear to be improper testimony, but when viewed in context, it is clear, as the court of appeals determined, that the prosecutor is merely calling upon the jury to utilize their common sense and experience to reject the defendant's argument.

Even if this court were to consider Burr's additional arguments not addressed by the court of appeals, this court finds that these statements, when viewed in isolation or together, were insufficient to deprive Burr of a fair trial, particularly in light of the weight of the evidence against the defendant. Therefore this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Right to Confrontation**

Burr alleges that his right to confront his accuser was violated when the court did not permit his attorney to cross-examine Paul Jackson regarding the fact that Paul Jackson avoided a possible life sentence by obtaining immunity for his testimony. (Pet. Br. at 32.) When defense counsel asked Paul Jackson if he was aware that a conviction for first-degree intentional homicide requires a life sentence, the court cut him off and the prosecutor objected. (Pet. Br. at 32.) Defense counsel argued that this line of questioning was relevant with respect to the witness' credibility, but the state argued that Burr was attempting to persuade the jury to ignore the evidence and acquit the defendant out of sympathy for the defendant and fear of the consequences of its verdict. (Pet. Br. at 32.) Notably, at the time of the murder and his trial, the defendant was only fifteen-years-old. (Ans. Ex. A.)

- 9 -
Case 2:04-cv-00992-AEG   Filed 10/31/07   Page 9 of 19   Document 17

The court of appeals held that even if there was error in the trial court's refusal to permit this cross-examination, it was harmless, because the fact that life imprisonment is the punishment for first-degree intentional homicide is common knowledge. 2003 WI App 162, ¶29. In fact, Burr's defense attorney explicitly acknowledged that such information is common knowledge when he was presenting the objected-to question. Id.

A criminal defendant's right to confront his accusers is violated when he shows that he was prohibited from engaging in otherwise "appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (internal quotation marks and ellipses omitted). However, a defendant is not entitled to relief if the state is able to show beyond a reasonable doubt that the error did not contribute to the verdict. Id.

Given the context, it was understandable that the trial court would be quick on the trigger in sustaining the state's objection to defense counsel's question; an attorney representing a fifteen-year-old charged with first-degree intentional homicide may look for ways to gain sympathy from the jury, such as alerting them to the fact that a conviction would require a mandatory sentence of life in prison. In hindsight, it appears that the state and the court misunderstood the intent behind defense counsel's question; it was not that Burr's attorney was intending to garner sympathy, but rather was attempting to impeach the witness who had been granted immunity. Of course, this was not necessarily clear to the court at the moment in the midst of cross-examination.

The court of appeals held that because the punishment for first-degree intentional homicide is common knowledge, a fact that defense counsel acknowledged even as he was presenting the question to the witness, there was no chance that any error contributed to the jury verdict. The jury was well-aware of the consequences that the witness avoided in obtaining immunity, regardless of the restriction

- 10 -
Case 2:04-cv-00992-AEG   Filed 10/31/07   Page 10 of 19   Document 17

upon the cross-examination. Furthermore, the jury was still able to factor in the grant of immunity in its credibility assessment. Therefore this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Exclusion of Statement**

Burr alleges that the trial court's decision refusing to permit him to submit the statement of David Jackson wherein he told Ashley Getty to get rid of the phone number that he called her from the night before because the phone was stolen and person whose phone it was, was dead (Pet. Br. at 43.) violated his Sixth Amendment right to present a defense. Burr argues that this statement was circumstantial evidence corroborating the defense theory that Paul Jackson was responsible for the murder. (Pet. Br. at 43.)

The court of appeals acknowledged that this statement was not hearsay, because it was not offered for the truth of the matter, but rather to prove David Jackson knew of the murder. 2003 WI App 162, ¶35. However, the court of appeals concluded that any error was harmless because nothing David Jackson said implicated Paul Jackson in the murder any more than Paul Jackson's own testimony. Id.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Ky., 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted). "This right includes the right to call witnesses on their own behalf and to cross-examine witnesses who have testified on the government's behalf." Cal. v. Trombetta, 467 U.S. 479, 486 n.6 (1984) (citing Davis v. Alaska, 415 U.S. 308 (1974); Washington v. Texas, 388 U.S. 14 (1967)).

Although, as the court of appeals acknowledged, the testimony Burr sought to elicit was admissible, the trial court's refusal to permit the testimony was harmless error. The Supreme Court has

repeatedly stated "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." See, e.g., Van Arsdall, 475 U.S. at 681 (citing United States v. Hasting, 461 U.S. 499, 508-09 (1983); Bruton v. United States, 391 U.S. 123, 135 (1968)). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman v. Cal., 386 U.S. 18, 24 (1967).

As the court of appeals recognized, Paul Jackson's own testimony was sufficiently incriminating and provided an explanation for Paul Jackson to know that the victim was dead and also an explanation of how David Jackson would have acquired this knowledge. In no way did David Jackson's knowledge that the victim was dead create circumstantial evidence that Paul Jackson was responsible for the murder or, more importantly, that Burr was not involved. Thus, the state has demonstrated that the court's error in denying admission of the evidence was harmless beyond a reasonable doubt. Therefore this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Bystander Jury Instruction**

Burr argues that the court's sua sponte refusal to give the bystander jury instruction in conjunction with the party to a crime jury instruction on the basis that the court saw no evidence to support such an instruction, violated Burr's right to due process. (Pet. Br. at 48-47.) Burr argues that this deprived him of a stronger theory of defense, i.e. that he was present during the crime but did not have any criminal intent and did nothing to assist in the crime. (Pet. Br. at 49.)

The court of appeals held that the trial court correctly refused to give the bystander jury instruction because there was no evidence to support this defense. 2003 WI App 162, ¶39.

"Before a federal court may overturn a conviction resulting from a state trial [based upon a defective jury instruction], it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to

the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. Id. at 146-47 (citing Boyd v. United States, 271 U.S. 104, 107 (1926)). The Due Process Clause is violated if a jury instruction relieves the government of proving an element of an offense beyond a reasonable doubt. Id. at 147 (citing In re Winship, 397 U.S. 358 (1970)).

Burr points to no evidence in the record to indicate that he was a mere observer. He simply argues that the jury could have inferred that Burr was a bystander on the basis that Paul Jackson had a motive to lie about Burr's involvement in order to protect himself. Such an argument is without merit. It was Paul Jackson that placed Burr at the scene and Paul Jackson that implicated Burr in the crime. If the jury was to conclude that Paul Jackson was lying to protect himself, the most logical inference would be that Paul Jackson was lying regarding Burr being present at all, and not simply about Burr's specific actions.

Moreover, by refusing to give the bystander jury instruction, Burr was not denied the opportunity to present any particular defense, nor was the government relieved of proving any element of the crime beyond a reasonable doubt. The jury was provided the following instruction with regards to criminal liability as a party to the crime:

> Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime, although the person did not directly commit it and although the person who directly committed it has been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.
> A person is concerned in the commission of the crime if the person, (a), directly commits the crime, or, (b) intentionally aids and abets the commission of it, or, (c) is a party to a conspiracy with another to commit or advises, hires, counsels, or otherwise procures another to commit it.
> Such a party is also concerned in the commission of any other crime which is committed in the pursuant of the intended crime and which, under the circumstances, is a natural and probable consequence of the intended crime.
> This paragraph does not apply to a person who voluntarily changes his or her mind and no longer desires that the crime be committed and notifies the other parties

>      concerned of his or her withdrawal within a reasonable time before the commission
>      of the crime so as to allow others to withdraw.

(Ans. Ex. L at 23-24.)

The bystander portion of the party to the crime instruction reads as follows: "However, a person does not aid and abet if he is only a bystander or spectator, innocent of any unlawful intent and does nothing to assist the commission of the crime." (Pet. Br. at 48.)

A jury's conclusion that the state has proven all elements of a defendant's criminal liability as a party to the crime necessarily rejects the conclusion that the defendant was a bystander. The bystander jury instruction merely offers the jury arguably unnecessary explicit clarification if it was presented with appropriate evidence to justify the need for such clarification. The conclusion that there was no evidence in the record to support the claim that Burr was merely a bystander was not in error and it did not relieve the government of proving each and every element of the crime beyond a reasonable doubt. The jury was accurately instructed as to the elements of criminal liability as a party to the crime and the jury's verdict reflects its conclusion that the government proved each of these elements beyond a reasonable doubt. Therefore, this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Sentencing**

Burr alleges that information in his pre-sentence report that he was bully was inaccurate. (Pet. Br. at 52.) The court decided to strike the language but nonetheless, at sentencing stated that "[a]ll through school and his contact with other kids, he's been a bully." (Pet. Br. at 52.) The court of appeals found that the court's reference was harmless in light of the court's numerous other comments regarding the brutal nature of the crime, Burr's primary role, lack of remorse, anti-social tendencies, substance abuse, and the need to protect the public. 2003 WI App 162, ¶43.

Burr's first argument is that the court of appeals' harmless error analysis was contrary to the United States Supreme Court precedent regarding harmless error analysis, specifically <u>Chapman v. California</u>, 386 U.S. 18 (1967). (Pet. Br. at 54.) The court of appeals stated the harmless error standard as "no reasonable probability." If one looks to the case cited by the court of appeals and, in turn, analyzes the cases cited in that case, one will find that the Wisconsin Supreme Court initially held that an error is harmless if there is "no reasonable *possibility*" that the error contributed to the outcome. (Pet. Br. at 54-55.) Burr argues that the substitution of the word "probability" for "possibility" resulted in a legal error that warrants relief in this court.

This semantic argument is without merit. First, it is clear that the court of appeals used the terms "probability" and "possibility" interchangeably in its decision. <u>See</u> 2003 WI App 162, ¶29. Even if this court were to find that there was a legal distinction between these two words, such an inquiry would be irrelevant to this court's present purposes. The only relevant question is whether the court of appeals' decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court? To this question, it is clear to the court that the answer is "no." Under <u>Chapman</u>, before an error of constitutional significance may be dismissed, the State must demonstrate that the error was harmless beyond a reasonable doubt. 386 U.S. at 24. Regardless of the specific word used, the court of appeals reasonably applied this standard in reaching its conclusion, and thus Burr is not entitled to relief on this ground.

Second, Burr argues that his due process right to be sentenced upon accurate information was violated. A criminal defendant has a constitutional right to be sentenced upon accurate information. <u>See</u> <u>United States v. Tucker</u>, 404 U.S. 443, 447 (1972); <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948); <u>Theodorou v. United States</u>, 887 F.2d 1336, 1339 (7th Cir. 1989). "[I]n order to show a due process violation, the defendant must raise grave doubt as to the veracity of the information and show that the

court relied on that false information in determining the sentence." United States v. Eschweiler, 782 F.2d 1385, 1387 (7th Cir. 1986) (discussing Fed. R. Crim. P. 32(c)(3)(D)).

Having reviewed the transcript of the sentencing proceedings, (Ans. Ex. M), it is not entirely clear that the court's characterization of Burr as a "bully" was a dependent upon the disputed and stricken information of the pre-sentence report. The word "bully" is necessarily somewhat ambiguous and thus it is quite possible that the court was making this characterization based upon any number of the other anti-social behaviors documented in the pre-sentence report. (See Ans. Ex. M at 26.) The conclusion that the court was not referring to the specific allegation in the pre-sentence report is supported by the fact that at sentencing the court stated that Burr had been a bully in part because of is interactions with other "kids," whereas in the pre-sentence report there was an allegation that Burr had bullied only a individual child. Further, the sentencing judge stated at the hearing on Burr's post-conviction motion that he did not base his sentence upon the information stricken from the pre-sentence investigation. (Ans. Ex. N. at 18.) Thus, Burr fails to demonstrate that the court relied upon erroneous information in imposing sentence.

Even if it could be determined that the court did rely upon the disputed fact that Burr bullied another child at school, and the information contained in the pre-sentence report was not true, it is clear that this factor was just one of many that the court set forth in explaining its sentence. Even if this one factor was subtracted from the court's explanation of his sentence, it was clear that the court provided many reasons that adequately justify the sentence imposed. Thus, it is clear to the court that any alleged error did not have a substantial and injurious effect or influence upon the sentence Burr received. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Therefore, this court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

Burr also alleges that the trial court improperly penalized him for exercising his right to self-incrimination. The pre-sentence investigation indicated that the author was unable to analyze issues of remorse or victim empathy because Burr had been advised by counsel not to comment on his version of the offense, because he intended to appeal and if a new trial was granted such statements may be used against him. (Pet. Br. at 58.) In sentencing, the court commented on Burr's lack of remorse and in sentencing other co-defendants, contrasted their remorse with Burr's absence of remorse. (Pet. Br. at 59.)

The respondent argues that Burr procedurally defaulted this claim by not fully developing it to the court of appeals. (Resp. Br. at 44.) Rather, Burr argued that the trial court erroneously exercised its discretion and did not phrase the argument in constitutional terms. (Resp. Br. at 44.)

The court of appeals held that Burr was not punished for his exercise of his right to silence and the court did not give undue weight to Burr's lack of remorse in fixing the sentence. 2003 WI App. 162, ¶46.

Without resolving the question whether Burr procedurally defaulted on his claims by failing to adequately present the issue to the court of appeals, the court shall attempt to address Burr's claim upon its merits. This is, of course, somewhat difficult since the court of appeals did not specifically address the issue.

The Fifth Amendment's prohibition upon drawing adverse inferences from a defendant's silence is equally applicable in the sentencing phase of trial. See Mitchell v. United States, 526 U.S. 314, 327-29 (1999). However, the Court's holding is limited to the circumstances of the case which is that courts may not rely upon a defendant's silence to determine facts of the case. Id. at 330. The Court expressly noted that the question of whether a defendant's silence may be considered in determining a defendant's lack of remorse, was not presented to the Court and thus it expressed no view on the matter. Id. In light of this explicit limitation on the Supreme Court's holding, Burr is unable to demonstrate that

- 17 -
Case 2:04-cv-00992-AEG    Filed 10/31/07    Page 17 of 19    Document 17

the decision of the decision of the court of appeals was contrary to any clearly established federal law as determined by the United States Supreme Court. Therefore, the court shall turn to the question of whether the court of appeals' decision involved an unreasonable application of any clearly established federal law as determined by the United States Supreme Court.

When the judge stated during sentencing, "A very disturbing thing is that I have not seen one ounce of remorse or repentance in this case," (Ans. Ex. M at 29-30), the court was merely commenting upon the record as a whole; there is no indication that the court's observation that there was an absence of remorse was directly related to Burr's exercise of his right to silence. Although waiving his right to silence would have been one way to place remorse on the record, it certainly was not the only way. For example, the court noted that "Mr. Burr's demeanor at all times during this trial and at all times during his court appearances has been absolutely flat affect. I have not seen one winsing (sic) look. I have not seen one look of tenderness towards anybody on the stand." (Ans. Ex. M at 29.) The Supreme Court has explicitly held that such sentencing considerations are appropriate. United States v. Grayson, 438 U.S. 41, 50 (1978) ("[W]e have acknowledged that a sentencing authority may legitimately consider the evidence heard during the trial, as well as the demeanor of the accused." (citing Chaffin v. Stynchcombe, 412 U.S. 17, 32 (1973))). Thus, it appears that the court's conclusion regarding Burr's lack of remorse rested upon circumstances other than Burr's exercise of his right to silence. Therefore, Burr fails to demonstrate that his right to against self incrimination was violated by the sentence imposed.

Moreover, in cases following Mitchell, federal courts have repeatedly held that a defendant's lack of remorse remains an appropriate sentencing consideration and such considerations do not impinge upon a defendant's right to remain silent. See, e.g., Miller v. Walker, 413 F. Supp. 2d 251, 261 (W.D.N.Y. 2006) ("It is well-recognized that a defendant's manifestation of remorse and his acceptance of responsibility for his conduct are proper factors to consider in sentencing. While the Fifth

Amendment provides a safeguard against judicially coerced self-disclosure' that extends to the sentencing phase of a criminal proceeding, it does not bar a court from considering a defendant's lack of remorse." (internal citations and quotation marks omitted)); Bohan v. Kuhlmann, 234 F.Supp. 2d 231, 271 (S.D.N.Y. 2002) ("While the Fifth Amendment provides a 'safeguard against judicially coerced self-disclosure' that extends to the sentencing phase of a criminal proceeding, it does not bar a court from considering a defendant's lack of remorse." (citing Mitchell, 526 U.S. at 322)); El v. Artuz, 105 F. Supp. 2d 242, 255 (S.D.N.Y. 2000) ("Although a defendant has a right to remain silent, a defendant's refusal to acknowledge any responsibility or to show any remorse in the face of clear evidence of wrongdoing is surely an appropriate factor for a sentencing judge to consider when choosing an appropriate sentence from within a range of statutorily-permissible sentences.").

In light of the fact that all the federal court decisions that this court has been able to identify wherein the issue of the appropriateness of a sentencing court's consideration of a defendant's lack of remorse in light of the defendant's right to remain silent during sentencing, as recognized by Mitchell, have held the a lack of remorse remains an appropriate factor in fixing sentence, this court is unable to say that the decision of the court of appeals was an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

**IT IS THEREFORE ORDERED** that, for the reasons set forth above, Jeffrey Daniel Burr's petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2007.

> BY THE COURT:
>
> s/Aaron E. Goodstein
> AARON E. GOODSTEIN
> U.S. Magistrate Judge